UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANS TUPPER BARBOZA,
                            Plaintiff,

-v-

DOREEN ANN HUGHES JIRON,
                            Defendant.

24-CV-5995 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

       This is an action for conversion and for an accounting regarding more than ten million dollars of a husband's inheritance that he transferred to his wife prior to commencing a now-pending divorce proceeding between them in Costa Rica. Defendant Doreen Ann Hughes Jiron moves this Court to dismiss the action—or, in the alternative, to stay it—for reasons of "international comity" or under the doctrine of *forum non conveniens*. Hughes Jiron moves as well to stay discovery pending the Court's disposition of the motion to dismiss. For the reasons that follow, this action is stayed pending the Costa Rican court's determination of its own jurisdiction over the funds at issue in this case. Hughes Jiron's motion to dismiss in the interest of international comity and under the doctrine of *forum non conveniens* is denied without prejudice. Hughes Jiron's motion to stay discovery pending the Court's disposition of the other motions is denied as moot.

**I.    Background**

       The following facts are taken from the complaint and presumed true for the purposes of resolving the motion to dismiss. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). Hans Tupper Barboza and Doreen Ann Hughes Jiron were married in Costa Rica in 2015. (ECF No. 1 ("Compl.") ¶ 20.) Five years before, Tupper Barboza inherited money from his

1

father that was held in several family trusts shared with Tupper Barboza's mother and brother. (*Id.* ¶ 4.) From 2018 to 2021, Tupper Barboza dissolved his portion of the trusts and transferred more than ten million dollars of the proceeds to Hughes Jiron to hold in Morgan Stanley accounts located in New York. (*Id.* ¶¶ 5, 22-24.) In 2020, Hughes Jiron requested that Tupper Barboza leave the family home, and in 2022, he initiated divorce proceedings between them in Costa Rican court. (*Id.* ¶¶ 5-6.)

The Costa Rican divorce action is still pending.[1] In that proceeding, Tupper Barboza requested initially 50% of the funds that he had originally transferred to Hughes Jiron during their marriage. (*Id.* ¶ 7; ECF No. 15-1 at 14.[2]) In that same proceeding, Hughes Jiron has contended that the funds were not marital property, but a gift that she is not obligated to return and thus not within the divorce court's jurisdiction. (Compl. ¶ 9.) In describing the divorce proceeding in filings in this case, Tupper Barboza agrees that the funds are not marital property, but instead his sole property that he received as part of his inheritance before marriage. (*Id.* ¶¶ 5, 11.) Tupper Barboza alleges that, since receiving the transfers, Hughes Jiron has "moved them into a new account entirely hidden from Mr. Tupper." (*Id.* ¶ 8.)

Tupper Barboza brought suit in this Court for conversion and for an accounting of the disputed funds on August 7, 2024. (*Id.* ¶¶ 30-48.) Hughes Jiron moved to dismiss the complaint on the grounds of international comity and under the doctrine of *forum non conveniens* on September 23, 2024 (ECF No. 13), and filed an accompanying memorandum in support (ECF

---

[1] Tupper Barboza does not allege this but concedes it in briefing. (*See* Opp. at 9-11.)

[2] ECF No. 15-1 is a certified translation of the Claim for Recognition of Common Law Marriage and Divorce. As it is a document relied upon in the complaint and included with the motion to dismiss, the Court may take notice of its contents. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

No. 14 ("Mem.")).  Tupper Barboza opposed the motion on October 23, 2024.  (ECF No. 22 ("Opp").)  Hughes Jiron filed a reply in further support of the motion on November 6, 2024.  (ECF No. 26 ("Reply").)  Hughes Jiron also moved to stay discovery in this case pending the Court's resolution of the motion to dismiss (ECF No. 27), which Tupper Barboza opposed (ECF No. 29).  The Court held an initial pre-trial conference on November 21, 2024, during which both sides presented arguments regarding the motion to stay discovery.

## II.     Discussion

### A.     International Comity

Hughes Jiron moves first to dismiss the complaint on the ground of international comity.  (Mem. at 8.)  That term refers to a set of doctrines which recognize within the United States "the legislative, executive or judicial acts of another nation," though it is "not an imperative obligation of courts but rather . . . a discretionary rule of practice, convenience, and expediency."  *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quotation marks omitted) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895), and *J.P. Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 423 (2nd Cir. 2005)).  Occasionally, international comity compels domestic courts to abstain in order to defer to a pending foreign proceeding—a species of the doctrine that the Second Circuit calls "comity of the courts."  *Id.* (quoting Joseph Story, *Commentaries on the Conflict of Laws* § 38 (1834)).  However, like other forms of abstention, that practice is the exception, rather than the rule.  *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25-26 (1983).  "The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  *Royal & Sun All.*, 466 F.3d at 92 (quoting *Colo. River Water Conversation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

3

"The task of a district court evaluating a dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." *Id.* at 93; *see also Bigio v. Coca-Cola Co.*, 239 F.3d 440, 454 (2d Cir. 2000) ("When a court dismisses a complaint in favor of a foreign forum pursuant to the doctrine of international comity, it declines to exercise jurisdiction it admittedly has."). Where a district court is considering abstaining in light of a pending state-court proceeding, "the decision . . . does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. "In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun All.*, 466 F.3d at 94. That approach applies regardless of whether the moving party seeks dismissal or a stay, *Tarazi v. Truehope, Inc.*, 958 F. Supp. 2d 428, 433 (S.D.N.Y. 2013) (Francis, Mag. J.) (collecting cases), though a stay—"[a]s a lesser intrusion on the principle of obligatory jurisdiction"—may be justified on grounds insufficient to justify outright dismissal, *see Royal & Sun All.*, 466 F.3d at 96.

The Second Circuit directs district courts faced with a request to abstain because of a parallel foreign proceeding to consider a non-exhaustive list of factors, including:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

4

*Id.* at 94. (citing *Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898-99 (2d Cir. 1999)).  The task is to "assess[] . . . the totality of the circumstances," *Finova Cap. Corp.*, 180 F.3d at 900, "to determine whether the specific facts before [the court] are sufficiently exceptional to justify abstention."  *Royal & Sun All.e*, 466 F.3d at 94.

### 1.     Similarity of Parties and Issues

The first two *Royal and Sun Alliance* factors—similarity of the parties and similarity of the issues—together determine whether the foreign and domestic actions are "parallel."  "For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions." *Id.* (citing *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  The parties here do not dispute that they are the same parties to the Costa Rican divorce proceeding, but they do dispute whether both proceedings concern "substantially the same issues."  (*See* Mem. at 9-10; Opp. at 13-14.)  That requirement is likely satisfied in cases where "the determination of the issue presented by the [foreign] action will resolve a major portion of the claims in the [domestic] action." *Tarazi*, 958 F. Supp. 2d at 435 (quotation marks omitted) (quoting *Ole Media Mgmt., L.P. EMI April Music, Inc.*, No. 12-CV-7249, 2013 WL 2531277, at *4 (S.D.N.Y. June 10, 2013)).

The circumstances here present a subtle twist on the cases cited by both parties.  It is true, as Hughes Jiron argues, that "[t]he Costa Rican Court has spent the past two years collecting testimony and gathering evidence . . . to decide whether these funds were marital property or a gift." (Mem. at 9-10.)  But it is also true, as Tupper Barboza argues, that "both Parties agree that the Funds are not marital assets," and also that "no conversion action is pending in Costa Rica." (Opp. at 13.)  But the reasons both parties contend the funds are not marital property are key.  In

Costa Rica, Hughes Jiron argues the funds were a gift that she is under no obligation to return. (Compl. ¶ 9.)  Tupper Barboza, on the other hand, argues that the funds constitute his inheritance and "personal wealth." (*Id.* ¶¶ 1-4.)  Thus, while the parties do agree that the funds are not marital assets, it is no foregone conclusion that the divorce court will come to the same conclusion.  Indeed, the divorce court could determine that the funds are marital assets or otherwise subject to equitable division,³ precluding Tupper Barboza's claim for conversion (and likely rendering moot his claim for an accounting).  *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001) ("To establish a cause of action for conversion under New York law, a plaintiff must show (1) 'legal ownership or an immediate superior right of possession to a specific identifiable thing' and (2) that the defendant 'exercised an unauthorized dominion over the thing in question . . . to the detriment of the plaintiff's rights.'" (quoting *Pioneer Comm. Funding Corp. v. United Airlines*, 122 B.R. 871, 883 (S.D.N.Y. 1991)).

Thus, though Hughes Jiron is incorrect to argue that "the difference between the two actions is a difference of form and not of substance" (Mem. at 10 (cleaned up)), it is true that "if the [Costa Rican] court rules" that the funds are marital property, "this action will be resolved." *See Tarazi*, 958 F. Supp. 2d at 435.  And "if the [Costa Rica] court rules" that the funds are not marital property, "its ruling will be 'instructive on the ultimate resolution' of this action because it will have determined," at least in part, the legal status of the funds in question.  *See id.* (quoting *Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09-CV-7966, 2009 WL 5125113, at

---

³ The parties do not describe with clarity what jurisdiction the Costa Rican court will have over the disputed funds, if any, following a determination that they are not marital assets. That is all the more reason to grant a stay to await that court's determination of its jurisdiction, which may be even more coextensive with this Court's than the parties have described.

\*6 (S.D.N.Y. Dec. 29, 2009)); *see also In re Flanders*, 517 B.R. 245, 258-60 (Bankr. D. Col. 2014) (discussing the issue-preclusion effects of divorce-court determinations). The Court does not consider the mere potential for an influential or preclusive ruling from the Costa Rican court sufficient to weigh in favor of dismissal. However, "the imposition of a stay would 'not prevent the additional issue from being litigated [here] . . . . Instead, it would permit an underlying dispute to be resolved first, one which is likely to prove either instructive on the ultimate resolution of the [domestic] action or largely dispositive." *Id.* at 435 (cleaned up) (quoting *Argus Media*, 2009 WL 512113, at \*6). Therefore, the first factor weighs in favor of granting a stay pending the Costa Rican court's determination of whether the funds sought in this case are marital property or are otherwise subject to its jurisdiction.

### 2. Adequacy of the Foreign Forum

The third *Royal and Sun Alliance* factor requires the Court assess the adequacy of the foreign forum. The parties agree that "[a]n alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.'" *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 159 (2005).[4]

To begin, no one argues that Hughes Jiron is not amenable to service in Costa Rica or that the Costa Rican court is inadequate to determine its own jurisdiction over the marital assets.

---

[4] The Second Circuit has suggested that the *Norex* approach may not be applicable in the international comity context, for "while abstention doctrines and the doctrine of *forum non conveniens* proceed from a similar premise, abstention doctrine is of a distinct historical pedigree, and the traditional considerations behind dismissal for *forum non conveniens* differ markedly from those informing the decision to abstain." *Royal & Sun All.*, 466 F.3d 88 at 95 (cleaned up) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722-23 (1996)). Whatever the proper test is, the Court is satisfied that a stay is appropriate to allow a foreign court—whose procedures no one considers inadequate—to determine whether it has jurisdiction over the precise subject matter of this litigation between identical parties.

Instead, Tupper Barboza argues that Hughes Jiron has not carried her burden to show "that the foreign court can offer the remedy sought," namely, a return of the funds. (*See* Opp. at 14.) But this issue collapses back to the first, as Tupper Barboza argues that the Costa Rican forum lacks jurisdiction to order the return of funds in anticipation of its ruling that the funds do not constitute marital assets. (*See id.* at 10, 14.) Far from counseling against abstention, Tupper Barboza's argument supports a stay, since it will allow this Court to await a determination of the divorce court's jurisdiction and, thus, its authority to award the remedy sought. This factor, too, weighs in favor of a stay.

### 3. Prejudice and Convenience

The third and fourth *Royal and Sun Alliance* factors consider prejudice to either party in granting or denying the request for abstention, as well as convenience to the parties and witnesses. Tupper Barboza makes only one argument for prejudice in opposing the abstention motion: that the Costa Rican court cannot afford him the relief sought. (Opp. at 15.) That, again, is a reason to stay the case. Tupper Barboza argues also, in opposing Hughes Jiron's motion to stay proceedings pending this Court's resolution of the dispositive motion, that he has reason to believe funds are being depleted and thus immediate discovery is necessary to account for them. (*See* ECF No. 29 at 1.)

But this concern is highly speculative. For one thing, the parties agree that the Costa Rican court is likely to resolve its determination of the funds' status within the next six months. (See Mem. at 11; Opp. at 22.) For another, Tupper Barboza's only basis for concern is Hughes Jiron's purported statement that much of the funds were lost after having been invested in the

stock market.  (*See* ECF No. 29 at 2.)[5]  Tupper Barboza does not allege any mismanagement or fraud on Hughes Jiron's part that would form a culpable explanation for the alleged loss.  Add to that already thin allegation that the Costa Rican court is currently determining whether the very same funds in question are within its jurisdiction—and that, there, an accounting of the funds is available to Tupper Barboza as part of the divorce procedure (*see* Reply at 7-8)—and the concern about the "the possibility of diminished . . . funds" appears to be "contingencies upon contingencies and therefore too speculative to warrant denying the stay."  *See Aaron v. Ill. Nat'l Ins. Co.*, No. 22-CV-2070, 2022 WL 4311755, at *7 (E.D. La. Sept. 19, 2022) (quotation marks omitted).  The Court concludes that this factor, while weighing in favor of proceeding immediately, does so only modestly.

### 4. Relative Connection to the United States and Costa Rica

The final *Royal and Sun Alliance* factors concern the litigation's relative connectedness to the foreign and domestic forums.  Naturally, the parties disagree on this point:  Hughes Jiron argues that "a Costa Rican Court has been tasked with adjudicating the ownership and distribution of property acquired and transferred during the course of a Costa Rican marriage" (Mem. at 13), while Tupper Barboza argues that "[t]he Funds, the witnesses, and the parties . . . all have a high connection to New York" (Opp. at 15).  Like much that came before, this question will be answered by the divorce court's determination of the nature of the assets.  If they are marital assets or otherwise within its jurisdiction, this case will bear a high relationship to Costa Rica and only a minor one (the presence of funds) to the United States.  And if the divorce court concludes it lacks authority over the funds, proceeding in this court will make

---

[5] At conference, counsel for Hughes Jiron represented that the bulk of the funds are still accessible.

sense, as the funds, the defendant, and several witnesses are located here.  (*See* Opp. at 19-20.) Indeed, the claim itself for conversion of the funds may well turn on Hughes Jiron's rightful interest in them, which is currently under consideration by the Costa Rican court.  This factor, too, weighs in favor of a stay pending the divorce court's determination of its jurisdiction over the disputed funds.

Because four of the factors weigh in favor of a stay, and only the prejudice factor weighs (modestly) against the stay, the Court concludes that this case presents exceptional circumstances that warrant abstaining in the interest of international comity.  Though the circumstances would likely not permit dismissing the action entirely, they suggest that staying the action to permit the first-filed Costa Rican divorce action to determine its jurisdiction over the funds Tupper Barboza seeks here to be in the interests of international comity and will not meaningfully prejudice or inconvenience the parties.  Accordingly, Hughes Jiron's motion for dismissing the case is denied without prejudice, and her alternative request for a stay is granted.

> **B.**     ***Forum Non Conveniens***

Hughes Jiron moves in the alternative to dismiss the case under the doctrine of *forum non conveniens*.  (Mem. at 14.)  That doctrine permits "a federal district court [to] dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).  This motion is simple to resolve, however, because "[a] *forum non conveniens* motion cannot be granted absent an adequate alternative forum."  *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 29 (2d Cir. 2002) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)).  This burden falls on the defendant.  *Iragorri*, 274 F.3d at 71.  Here, Hughes Jiron does not argue that the Costa Rican court, if it concludes the disputed funds are *not* marital property, will have any authority to conduct an action for conversion or an accounting, as the funds were

allegedly converted in New York and remain here.  (*See* Opp. at 17-19.)  In other words, the defendant has not established that the foreign forum "permits litigation of the subject matter of the dispute."  *Cf. Norex*, 416 F.3d at 157.

On this point, this Court's decision in *Chigirinskiy v. Panchenkova*, No. 14-CV-4410, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015), is instructive.  There, the plaintiff brought a similar action to recover money and property from his ex-wife, in spite of another case in Russia for largely the same relief.  2015 WL 1454646, at *1-3.  The Court held that, notwithstanding the presence of witnesses and parties in the United States, "Russia [was] an adequate alternative forum for [the] dispute," since the defendant "consent[ed] to jurisdiction in Russia and . . . submitted expert evidence showing that Russian courts could entertain the property claims" at issue.  *Id.* at *10.  Here, by contrast, no party has presented evidence for or against the amenability of Costa Rican courts to the tort claims at issue.[6]

Because the Court is not currently satisfied that Costa Rica is an adequate alternative forum to adjudicate the subject matter of the present dispute, the motion to dismiss under the doctrine of *forum non conveniens* is denied without prejudice to renewal following the Costa Rican court's determination of its jurisdiction over the funds at issue.

---

[6] The parties argue also about what *Chigirinskiy* says about the balance of public and private interest factors in this case.  The Court need not reach those questions, though, because it is not yet satisfied Costa Rica is an adequate alternative forum.  It is significant, however, that in that case the defendant did "not meaningfully contest that all relevant proceedings in Russia [were] . . . over" at the time the motion to dismiss was under consideration.  2015 WL 1454646, at *13.  In this case, the relevant parallel foreign action remains pending, further underscoring the propriety of a stay.

11

### C. Stay of Discovery

Because the Court grants Hughes Jiron's motion to stay the action on the basis of international comity, her motion to stay discovery pending the Court's resolution of the motion to dismiss is denied as moot.

## III. Conclusion

For the foregoing reasons, Defendant's motion to stay this proceeding pending the Costa Rican court's determination of its jurisdiction over the disputed funds is GRANTED.

Defendant's motion to dismiss on the ground of international comity or under the doctrine of *forum non conveniens* is DENIED without prejudice to renewal upon the Costa Rican court's determination of its jurisdiction over the disputed funds.

Defendant's motion to stay discovery pending the resolution of the motion to dismiss is DENIED as moot.

The parties are directed to submit a joint status letter concerning the progress of the pending divorce action in Costa Rica upon the divorce court's determination of its jurisdiction over the disputed funds, or in any event within 180 days of the date of this Order.

The Clerk of Court is directed to (1) mark this action as stayed, and (2) close the motions at ECF Nos. 13 and 27.

SO ORDERED.

Dated: December 5, 2024
New York, New York

_____
J. PAUL OETKEN
United States District Judge