UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANS TUPPER BARBOZA,
                              Plaintiff,

-v-                                                    24-CV-5995 (JPO)

DOREEN ANN HUGHES JIRON,                               OPINION AND ORDER
                              Defendant.

J. PAUL OETKEN, District Judge:

Plaintiff Hans Tupper Barboza commenced this action for conversion and for an accounting regarding more than ten million dollars of his inheritance, which he transferred to his wife prior to commencing a divorce proceeding between them in Costa Rica.  Defendant Doreen Ann Hughes Jiron moves this Court to dismiss the action on the grounds of international comity and issue preclusion.  For the reasons that follow, the motion to dismiss is denied.

## I.      Background

The following facts are taken from the complaint and presumed true for the purpose of resolving the motion to dismiss.  *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).  The Court presumes familiarity with the background facts of this case, which were recounted in its prior Opinion and Order, and discusses only the facts relevant to the pending motion.  *See Barboza v. Hughes Jiron*, No. 24-CV-5995, 2024 WL 4987019, at *1-2 (S.D.N.Y. Dec. 5, 2024).  Tupper Barboza inherited a significant amount of money in 2010, following the death of his father.  (ECF No. 1 ("Compl.") ¶ 4.)  That money was held in three trusts.  (*Id.*) Tupper Barboza and Hughes Jiron were married in Costa Rica in 2015, and under the terms of the trusts, Hughes Jiron did not have access to Tupper Barboza's inheritance.  (*Id.* ¶¶ 4, 20.)

1

"As a showing of loyalty and devotion to his wife in their marriage, and to ensure [Hughes Jiron] was taken care of in case [Tupper Barboza] was ever incapacitated," Tupper Barboza dissolved his portion of the trusts and transferred a total of $10,151,444 (the "Funds") to Hughes Jiron's financial accounts from 2018 to 2021.  (*Id.* ¶¶ 5, 22-24.)  The first two of these transfers, which collectively totaled $3,860,459.04, occurred on April 9, 2018 and on November 2, 2020.  (*Id.* ¶ 26.)  The remaining transfers happened between December 8, 2020 and April 22, 2021.  (*Id.*)

The complaint alleges that "[t]hese transfers were never made with the intent to permanently deprive [Tupper Barboza] of the Funds" and that they were instead transferred to Hughes Jiron's account as "a family investment."  (*Id.* ¶ 24.)  The money was transferred to an Alliance Bernstein account over which Hughes Jiron had control, but Tupper Barboza was present on all calls with the investment managers at the accounts.  (*Id.*)  At one point, Tupper Barboza, unhappy with the financial planning advice from Alliance Bernstein, ensured the Funds were sent to a Morgan Stanley account that was also in Hughes Jiron's name.  (*Id.*)

In 2020, Hughes Jiron requested that Tupper Barboza leave the family home, and in 2022, Tupper Barboza initiated divorce proceedings between them in Costa Rican court.  (*Id.* ¶ 6.)  Tupper Barboza requested a return of the Funds on February 1, 2023.  (*Id.* ¶ 7.)  Hughes Jiron refused, claiming the Funds were provided to her as a gift, and moved the Funds to a new account hidden from Tupper Barboza.  (*Id.* ¶¶ 7-8.)

On December 5, 2024, the Court issued an Opinion and Order staying the action pending the Costa Rican court's determination of its own jurisdiction over the Funds.  *Barboza*, 2024 WL 4987019, at *6.  On January 7, 2026, Tupper Barboza moved to lift the stay on the basis that the Costa Rican family court issued its judgment in the divorce proceeding (the "Divorce

Judgment"). (ECF No. 42.) In relevant part, the Costa Rican court held that it did not have jurisdiction to determine the proper allocation of the Funds because the Funds were not marital property. (ECF No. 41 at 27-34.) The court held that the portion of the Funds transferred after November 20, 2020 were not marital property because they were transferred to Hughes Jiron during the de facto separation of the parties. (*Id.* at 29.) The court then held that the $3,860,459 transferred before that date "never served an onerous purpose; rather, on the contrary, they were made free of charge." (*Id.* at 34.) And because Article 41 of the Costa Rican Family Code establishes that marital property does not include those assets "brought into the marriage or acquired during the marriage, free of charge or for random reasons" (*id.* at 28 (quotation marks omitted)), the Costa Rican court concluded that the $3,860,459 did not constitute marital property (*id.* at 34). Accordingly, the Costa Rican court declined to exercise jurisdiction over the Funds, concluding that "whether the donation is valid is a matter that falls outside the material jurisdiction of this Court." (*Id.* at 32, 34.)

Following the issuance of the Divorce Judgment, this Court lifted the stay in this action on January 21, 2026. (ECF No. 48.) Hughes Jiron then filed the present motion to dismiss (ECF No. 49), accompanied by a memorandum of law in support (ECF No. 50 ("Mem.")). Tupper Barboza filed an opposition on February 18, 2026. (ECF No. 53 ("Opp.").) Hughes Jiron filed a reply in further support on March 4, 2026. (ECF No. 57 ("Reply").)

## II.    Discussion

Hughes Jiron argues that the complaint should be dismissed because Tupper Barboza is precluded from relitigating the Costa Rican court's factual finding that Tupper Barboza transferred the Funds to Hughes Jiron with gratuitous intent. (*See* Mem. at 7.) To resolve Hughes Jiron's motion, the Court must determine if the Divorce Judgment is entitled to recognition by this Court and, if so, the extent to which the Divorce Judgment should be

accorded preclusive effect over the conversion and accounting claims in this case. *Accord*

*Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 41 (2d Cir. 1998).

### A.    Recognition of Divorce Judgment

Hughes Jiron contends that the Court should recognize the Divorce Judgment as a matter

of international comity. (Mem. at 14-16.) "International comity has been described by the

Supreme Court as 'the recognition which one nation allows within its territory to the legislative,

executive or judicial acts of another nation, having due regard both to international duty and

convenience, and to the rights of its own citizens or of other persons who are under the

protection of its laws.'" *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d

418, 423 (2d Cir. 2005) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). "[T]he doctrine is

not an imperative obligation of courts but rather is a discretionary rule of practice, convenience,

and expediency." *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 190 (2d Cir.

2018). "In an action founded on diversity jurisdiction, 'the law of the forum with respect to

comity should be applied.'" *Chigirinskiy v. Panchenkova*, No. 14-CV-4410, 2015 WL 1454646,

at *13 (S.D.N.Y. Mar. 31, 2015) (quoting *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F.

Supp. 658, 664 (S.D.N.Y .1996), *aff'd*, 122 F.3d 1055 (2d Cir. 1997)).

Under New York law, "comity should be extended to uphold the validity of a foreign

divorce decree '[a]bsent some showing of fraud in the procurement of the foreign country

judgment . . . or that recognition of the judgment would do violence to some strong public policy

of this State.'" *Ahmad v. Khalil*, 40 Misc. 3d 1206(A), 975 N.Y.S.2d 364 (N.Y. Sup. Ct. 2013)

(quoting *Greschler v. Greschler*, 51 N.Y.2d 368, 376 (N.Y. 1980)). "Some evidentiary basis to

support the proposition that the particular divorce decree of the foreign country was the product

of individualized fraud or coercion or oppression or rested on proximately related public policies

fundamentally offensive and inimical to those of this State must be demonstrated." *Id.* (quoting *Gotlib v. Ratsutsky*, 83 N.Y.2d 696, 699-700 (N.Y. 1994)).

The Court recognizes the Divorce Judgment under the doctrine of comity. Tupper Barboza has not alleged that the Divorce Judgment was the result of fraud. Moreover, although Tupper Barboza argues that granting the Divorce Judgment preclusive effect over the conversion claim would violate New York's public policy in favor of determinations on the merits (Opp. at 13-14), that argument is better understood to contest whether the Costa Rican court reached the merits of Tupper Barboza's conversion claim, not whether the Divorce Judgment was in and of itself a valid judgment. The Court will address the question of preclusion below, but at the threshold question of recognition, it sees no reason not to recognize the "facially valid and undeniably regular" Divorce Judgment issued in Costa Rica. *Gotlib*, 83 N.Y.2d at 699.

### B.    Issue Preclusion

Hughes Jiron argues that the Divorce Judgment precludes Tupper Barboza from bringing a conversion claim because the Costa Rican court held that Tupper Barboza intended the Funds to be a gift to Hughes Jiron. (Mem. at 16-26.) Because Hughes Jiron disavows relying on claim preclusion (*id*. at 14 n.6), the Court considers only issue preclusion.

#### 1.    Legal Standards

"A party may invoke issue preclusion only if: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party raising the issue had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) (cleaned up). "The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion. In contrast, the burden of

showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing the application of issue preclusion." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (cleaned up).

"Collateral estoppel applies to judgments of foreign courts as long as the district court recognizes the foreign judgment, which the Court does here." *Atas v. New York Times Co.*, No. 22-CV-853, 2023 WL 5715617, at *3 (S.D.N.Y. Sep. 5, 2023). Federal courts sitting in diversity apply the law of the forum state to determine the preclusive effect of foreign country judgments on state law claims. *See Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 13-CV-8997, 2016 WL 236249, at *3 n.4 (S.D.N.Y. Jan. 20, 2016). "[T]here appears to be no significant difference between New York preclusion law and federal preclusion law." *Id.* (quoting *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001)).

At issue in this case are Tupper Barboza's conversion claim and his related accounting claim. (*See generally* Compl.) "To establish a cause of action for conversion under New York law, a plaintiff must show (1) 'legal ownership or an immediate superior right of possession to a specific identifiable thing' and (2) that the defendant 'exercised an unauthorized dominion over the thing in question . . . to the detriment of the plaintiff's rights.'" *Phansalkar v. Andersen Weinroth & Co., L.P.*, 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001) (quoting *Pioneer Comm. Funding Corp. v. United Airlines*, 122 B.R. 871, 883 (S.D.N.Y. 1991)).

Hughes Jiron argues that the complaint should be dismissed pursuant to issue preclusion because the Costa Rican court decided that Tupper Barboza gave the Funds to Hughes Jiron free of charge, and that the conversion claim necessarily fails if that is the case. (Opp. at 12-13.) "Where a party's interests in property have been sold, there can be no interference with their property rights and a conversion claim may not be maintained." *Reif v. Nagy*, 175 A.D.3d 107,

6

120 (1st Dep't 2019).  Likewise, voluntary relinquishment of the property, such as through an inter vivos gift, is fatal to a conversion claim.  *Accord id.* at 129-30.  "Under New York law, . . . there are three requirements for a valid inter vivos gift: (1) intent on the part of a donor to give; (2) delivery of the property given pursuant to such an intent; and (3) acceptance on the part of the donee."  *Est. of Wooters ex rel. Klein v. Goujjane*, 305 F. Supp. 2d 280, 285 (S.D.N.Y. 2003) (citing *Matter of Szabo*, 10 N.Y.2d 94, 98 (N.Y. 1961)).

2.      **Analysis**

Tupper Barboza argues that issue preclusion does not apply because the Costa Rican court did not have jurisdiction over the Funds, given that the Funds are not marital property.  (Opp. at 11-13.)  The Costa Rican court held that it could not determine if the Funds constituted a valid donation, given that the court had jurisdiction only over marital property and given that the Funds were not marital property.  (ECF No. 41 at 32.)  However, because the court had jurisdiction to determine *if* the Funds constitute marital property, it had jurisdiction to make the findings necessary to its conclusion that the Funds were not marital property.

Those findings, however, do not warrant preclusion of Tupper Barboza's claims before this Court now.  The Costa Rican court first considered the Funds that Tupper Barboza transferred to Hughes Jiron after the date of the couple's de facto separation (the "Post-Separation Funds").  The Costa Rican court made clear that "all deposits made after November 20, 2020, should not even be questioned as to whether they are marital property or not, since they were made during the de facto separation."  (ECF No. 41 at 29.)  The Divorce Judgment therefore did not reach the issue of whether the $6,290,985 transferred after that date (the "Post-Separation Funds") were transferred free of charge.  (*See id.*)  Hughes Jiron argues that the Costa Rican court's determination as to the pre-separation transfers was based on evidence applicable to all transfers.  (Mem. at 19 n.9, 21.)  Although that may be true, the Costa Rican court certainly

7

did not rely on that evidence in its ruling on its jurisdiction over the Post-Separation Funds. Because Tupper Barboza's intent as to the Post-Separation Funds "was not actually *and necessarily* decided in [the] prior proceeding," his claim as to these Funds cannot be defeated on grounds of issue preclusion. *Proctor*, 715 F.3d at 414 (quotation marks omitted).

Issue preclusion is also inappropriate as to the remaining $3,860,459 transferred before the date of separation (the "Pre-Separation Funds"). The Costa Rican court held that these transfers were made free of charge and "must be presumed to be gratuitous." (ECF No. 41 at 30-32.) The court reached this conclusion based on the record before it, which included: Hughes Jiron's tax form declaring the Pre-Separation Funds as gifts or bequests; the absence of any contract concerning the Funds, despite the large sum of money, Tupper Barboza's experience working with investment companies and familiarity with trusts; and evidence of the guilt that Tupper Barboza felt because he had been unfaithful and because Hughes Jiron, who had been complaining to him about money, had contracted an illness. (*Id.* at 30-34.)

There is no question that this determination as to the Pre-Separation Funds reached questions related to the conversion claim at issue here. In the Divorce Judgment, the pertinent issue was whether the Funds were given "free of charge," as Article 41 of the Costa Rican Family Code established that such assets do not qualify as marital property. (*Id.* at 28.) In answering that question, the Costa Rican court held that the Pre-Separation Funds were given without consideration, and thus that it lacked jurisdiction to allocate the Funds. (*Id.* at 30 ("[T]he essential thing is that [the Funds] w[ere] given free of charge, since . . . assets acquired for consideration are considered marital property, while those acquired free of charge are excluded, in accordance with paragraph 1 of section 41 of the Family Code.").) Neither party explains how Costa Rican law defines consideration or the concept of being free of charge. Nonetheless, it is

clear from the Divorce Judgment that the Costa Rican court was concerned with whether the transfer of the Pre-Separation Funds came with any strings attached. (*See id.* at 30-32.)

A finding of no consideration is "closely related" to the issue of whether assets were given as a gift—but that is not enough. *Nobel Ins. Co. v. Hudson Iron Works, Inc.*, 51 F. Supp. 2d 408, 412 (S.D.N.Y. 1999). Issues must be identical for issue preclusion to apply. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011). The Costa Rican court may have held that the Pre-Separation Funds were given free of charge, but it did not hold that Tupper Barboza *intended* the Pre-Separation Funds to be transferred as a gift. Although the distinction may seem small, it is material for the purposes of issue preclusion, as the operative question under New York law is whether Tupper Barboza had the requisite intent to make an inter vivos gift. *See Est. of Wooters ex rel. Klein*, 305 F. Supp. 2d at 285. The Court does not dispute that some of the evidence relied on by the Costa Rica court could bear on Tupper Barboza's intent— and the question of whether Tupper Barboza transferred the Pre-Separation Funds to Hughes Jiron free of charge may well be probative of whether Tupper Barboza intended to gift that money to Hughes Jiron. But the doctrine of issue preclusion does not empower this Court to bar Tupper Barboza's conversion claim on the basis that a prior court's determinations *could have* led it to the conclusion that Hughes Jiron argues for now. On the record before this Court, the Costa Rican court did not reach the issue of whether Tupper Barboza had the intent to make "an irrevocable present transfer of ownership." *Bader v. Digney*, 55 A.D.3d 1290, 1291 (4th Dep't 2008). The Court therefore declines to dismiss the complaint on the basis of issue preclusion.

Moreover, and as Tupper Barboza points out, the Costa Rican court emphasized that it did not have jurisdiction to determine "whether the donation is valid." (ECF No. 41 at 34.) Tupper Barboza argues accordingly that, even if the Divorce Judgment had reached the issue of

9

whether the Funds were an inter vivos gift to Hughes Jiron, that gift could still be invalidated based on defenses like undue influence or fraud. (Opp. at 20.) The Court is reluctant to dismiss the case without giving Tupper Barboza an opportunity to explore these defenses, given that the Costa Rican court made clear that it did not consider whether any defenses apply. Furthermore, and contrary to Hughes Jiron's contentions, Tupper Barboza need not have alleged such defenses in his complaint. (Reply at 9.) Whether or not the Funds were a gift is a possible defense of Hughes Jiron's to Tupper Barboza's conversion claim. Tupper Barboza was not required to plead a response to that potential defense. *See Rosen v. Brookhaven Cap. Mgmt., Co.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002) ("A plaintiff's complaint should contain allegations that support her claim, but a plaintiff has no obligation to anticipate and refute potential affirmative defenses." (citing *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999))); *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *16 (E.D.N.Y. June 16, 2009) (Bianco, J.) ("Complaints need not anticipate or attempt to defuse potential defenses. As complaints need not do this, the omissions do not justify dismissal." (cleaned up)).

## III.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss the complaint is DENIED.

Defendant shall file an answer to the complaint within fourteen days after the date of entry of this Opinion and Order.

The parties are directed to submit an updated proposed case management plan within fourteen days after the date of entry of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 49.

SO ORDERED.

Dated:  June 25, 2026
         New York, New York

_____
J. PAUL OETKEN
United States District Judge

10